UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ANNE M. BLANFORD, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO. 1:08-cv-1094-DFH-TAB |
| ST. VINCENT HOSPITAL AND HEALTH CARE CENTER, INC., | ) ) ) | |
| Defendant. | ) ) | |

ENTRY ON PENDING MOTIONS

Plaintiff Anne Blanford executed a "Financial Consent/Assignment of Benefits and Release of Information Form" to receive medical services from defendant St. Vincent Hospital and Health Care Center, Inc.  St. Vincent hired Med-1 Solutions, LLC, to collect allegedly delinquent debts from Blanford and the class she seeks to represent.  St. Vincent did not sell or assign its interest in consumer debts to Med-1.  Med-1 filed lawsuits against Blanford and similarly situated plaintiffs attempting to collect on St. Vincent accounts, and Med-1 requested attorney fees.  Blanford filed this action on behalf of herself and similarly situated plaintiffs alleging that St. Vincent violated the Fair Debt Collection Practices Act (FDCPA) and Indiana law.  St. Vincent has filed a motion to dismiss on the grounds that the court lacks subject matter jurisdiction and that Blanford has failed to state a claim upon which relief can be granted.  Fed. R. Civ.

P. 12(b)(1), (6).  The motion to dismiss is granted in part and denied in part.[1]
Blanford has filed a motion for class certification.  The court will discuss the
motion, but it will not rule on it at this time because of its ruling on the motion
to dismiss.

*St. Vincent's Motions to Dismiss*

I.     *Subject Matter Jurisdiction*

St. Vincent argues that the court does not have subject matter jurisdiction
over Blanford's claims because the claims violate the *Rooker-Feldman* doctrine.
The *Rooker-Feldman* doctrine "deprives federal courts of subject matter
jurisdiction where a party, dissatisfied with a result in state court, sues in federal
court seeking to set aside the state-court judgment and requesting a remedy for

---

[1]Blanford has filed a motion to strike St. Vincent's reply brief in support of
its motion to dismiss.  Dkt. No. 23.  The motion to strike argues that the brief was
filed outside of the deadlines provided in Local Rule 7.1(b) and Federal Rule of
Civil Procedure 6.  Local Rule 7.1(b) states that a party has seven days after
service of the response brief to serve the reply brief.  Federal Rule of Civil
Procedure 6 states that weekends are not counted when a party has fewer than
eleven days to file a document.  The response brief was filed on October 16, and
the reply brief was filed on October 31.  The reply brief was due on October 27.
St. Vincent argues that it converted its motion to dismiss into a motion for
summary judgment by attaching evidence and that parties have fifteen days to file
reply briefs for motions for summary judgment.  See Fed. R. Civ. P. 12(d).  It is
neither fair nor appropriate for St. Vincent to try to convert its own motion to
dismiss for failure to state a claim into a motion for summary judgment on the
reply brief, when the opposing party has no further right to respond.  If St.
Vincent wanted to file a motion for summary judgment, it should have done so
initially, ensuring that plaintiff would have appropriate rights to conduct discovery
and to present evidence.  Neither party will be prejudiced if the court strikes the
reply brief.  The motion to strike is granted.

an injury caused by that judgment." *Johnson v. Orr*, 551 F.3d 564, 568 (7th Cir. 2008); see generally *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). The Supreme Court has cautioned that the doctrine is confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005). The doctrine remains broad enough to preclude a party from challenging an injury that is "inextricably intertwined" with a state-court judgment. *Johnson*, 551 F.3d at 568.

On a motion to dismiss for lack of subject matter jurisdiction that is not supported by evidence, the court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Long v. Shorebank Development Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). The court may consider additional evidence that the parties submit to determine whether subject matter jurisdiction exists. *Id.* The parties here have submitted no evidence other than the complaint and its attachments. The court confines its review to those documents. Blanford makes claims under the FDCPA and Indiana law. *Rooker-Feldman* is not an all-or-nothing doctrine. It may apply to some of her claims but not others.

A.    *FDCPA Claims*

-3-

The complaint has two FDCPA counts.   Count I alleges a violation of 15 U.S.C. § 1692e, which prohibits debt collectors from using false, deceptive, or misleading representations or means in connections with collection of consumer debts.   Count II alleges a violation of 15 U.S.C. § 1692f, which prohibits use of unfair or unconscionable means to collect or attempt to collect consumer debts. For *Rooker-Feldman* purposes, the claims are more important than the statutory provisions that the counts invoke.   Count I alleges that St. Vincent violated § 1692e when it authorized Med-1 to sue Blanford in Med-1's name and to seek attorney fees.  Count II alleges that St. Vincent violated § 1692f when it authorized Med-1 to add attorney fees to debts that Med-1 attempted to collect.  Two claims emerge from these counts:  a claim that St. Vincent violated the FDCPA by authorizing Med-1 to seek attorney fees and a claim that St. Vincent violated the FDCPA by authorizing Med-1 to sue Blanford in Med-1's name.

### 1.    *Attorney Fees*

At the pleading stage, the *Rooker-Feldman* doctrine does not deprive the court of subject matter jurisdiction over the attorney fees claim.  The doctrine would apply if the state court had ordered Blanford to pay attorney fees to Med-1, but the complaint does not allege that this occurred, and other documents before the court do not indicate that it did.

Blanford argues that *Rooker-Feldman* does not apply because St. Vincent's FDCPA violations occurred prior to and were independent of Med-1's state court judgment.  According to Blanford, St. Vincent's FDCPA violations occurred when Med-1 filed a lawsuit seeking attorney fees with St. Vincent's authorization.

The Seventh Circuit recently addressed a similar argument based on very similar facts in *Kelley v. Med-1 Solutions, LLC*, 548 F.3d 600 (7th Cir. 2008).  In that case, St. Vincent hired Med-1 to collect debts from the plaintiffs.  Med-1 filed lawsuits in state court, and it obtained judgments that included attorney fees. The plaintiffs then sued Med-1 in federal court, alleging that it violated 15 U.S.C. §§ 1692e and 1692f by attempting to collect attorney fees for debts without having purchased or received an assignment of the debts.  The plaintiffs argued that Med-1's FDCPA violation occurred when it attempted to collect attorney fees, not when the state court issued its judgment.

The Seventh Circuit rejected this argument.  The court held that the FDCPA attorney fee claim was barred by the *Rooker-Feldman* doctrine because the court "could not determine that defendants' representations and requests related to attorney fees violated the law without determining that the state court erred by issuing judgments granting the attorney fees." *Kelley*, 548 F.3d at 605.  The court continued:  "we are still barred from evaluating claims, such as this one, where all of the allegedly improper relief was granted by state courts." *Id.*  Blanford

cannot escape the *Rooker-Feldman* doctrine by arguing that the attempt to collect attorney fees was independent of the judgment.

However, there is a critical distinction between this case and *Kelley* that leads the court to find that the *Rooker-Feldman* doctrine does not preclude Blanford's attorney fee claim at this stage. The complaint in this case simply does not specify whether the state court ordered Blanford to pay attorney fees to Med-1.[2] St. Vincent has not provided any information to clarify the situation. If the state court did not award attorney fees, then its judgment could not have caused Blanford's alleged injury and Blanford would not be asking this court to review that judgment. See *Exxon Mobil*, 544 U.S. at 284. At the pleading stage, the court must draw the inference in Blanford's favor and assume that the state court did not award fees. The motion to dismiss the attorney fees claim based on the *Rooker-Feldman* doctrine is denied.

B.     *Improper Party*

Unlike the attorney fees claim, the *Rooker-Feldman* doctrine deprives the court of subject matter jurisdiction over Blanford's claim that St. Vincent violated

---

[2]St. Vincent argues that Blanford's request that the court "enter judgment setting aside and vacating all judgment awards of attorney fees and/or court costs rendered against the plaintiff and putative class" is an admission that the state court awarded attorney fees to Med-1. Def. Br. 3; see Compl. 15 at ¶ 3. The court declines to engage in such guesswork when the parties should be able to provide definitive evidence on the issue.

the FDCPA by authorizing Med-1 to sue Blanford in Med-1's name when St. Vincent was the real party in interest.

The improper party claim fails because the court knows that Med-1 received a judgment against Blanford.  Blanford attached to the complaint a motion for proceedings supplemental filed by Med-1 in Hamilton Superior Court.  Compl. Ex. B.  The motion states that Med-1 had a judgment against Blanford.  Absent any contrary evidence, this attachment establishes that Med-1 obtained a judgment against Blanford.

A determination that St. Vincent violated the FDCPA by authorizing Med-1 to sue Blanford in Med-1's name would require the court to determine that the state court erred by entering a judgment in favor of Med-1.  This determination would be improper for the same reason that it would be improper to call into question a state court award of attorney fees to Med-1.  The court could not determine that St. Vincent violated the FDCPA by authorizing Med-1 to file the lawsuits in its own name "without determining that the state court erred by issuing judgments" in favor of Med-1.  *Kelley*, 548 F.3d at 605.

Despite this seeming barrier, Blanford argues that *Rooker-Feldman* cannot apply because St. Vincent itself was not a party to the state court proceeding. Blanford bases this argument on the rule that *Rooker-Feldman* does not apply where the federal plaintiff did not have a "reasonable opportunity" to raise its

federal claims in state court.  See *Long v. Shorebank Development Corp.*, 182 F.3d 548, 558 (7th Cir. 1999).  The Seventh Circuit recently noted in *dicta* that it is unlikely that a federal plaintiff can invoke the "reasonable opportunity" exception in light of *Exxon Mobil's* contraction of the *Rooker-Feldman* doctrine.  *Kelley*, 548 F.3d at 607.

Regardless of whether the "reasonable opportunity" exception survives *Exxon Mobil*, the fact that St. Vincent was not a party to the state proceeding does not save Blanford's claim.  At bottom, her claim depends on the proposition that St. Vincent was wrong to permit Med-1 to be named as a plaintiff.  To determine that St. Vincent violated the FDCPA, the court would have to find that the state court erred by entering judgment in favor of Med-1.  Med-1's status as a proper party is "inextricably intertwined" with the state court's determination that Med-1 was entitled to judgment.  See *Johnson v. Orr*, 551 F.3d 564, 568 (7th Cir. 2008).  Additionally, *Rooker-Feldman* focuses on the losing party, not the winning party, in state court.  See *Exxon Mobil*, 544 U.S. at 284 (explaining that the doctrine bars suits by state court losers complaining of injuries caused by the state court judgment); see also *Tal v. Hogan*, 453 F.3d 1244, 1257 (10th Cir. 2006) (federal plaintiff's RICO claim that federal defendants engaged in a conspiracy to condemn its property was barred by *Rooker-Feldman* even though federal defendants were different from the state-court plaintiff that brought successful state condemnation action).  The losing party in state court was Blanford, who is a party in this case.

The court does not have subject matter jurisdiction over Blanford's FDCPA improper party claim.

### C.     State Law Claims

#### 1.     Unjust Enrichment

Blanford claims that St. Vincent and Med-1 were unjustly enriched in "the amount of attorney fees illicitly taken from the plaintiffs and putative class members." Compl. ¶ 38. Blanford can succeed in this unjust enrichment claim only if the state court ordered her to pay attorney fees. If the state court ordered her to pay attorney fees, *Rooker-Feldman* divests this court of subject matter jurisdiction to hear the unjust enrichment claim. This claim must be dismissed.

#### 2.     Fraud on the Courts

Blanford's final claim is that St. Vincent perpetrated a fraud on the state court by authorizing Med-1 to create a false impression that Med-1 was the owner of Blanford's debt. Blanford requests relief pursuant to Indiana Trial Rule 60(B)(3), which permits courts to "relieve a party" from a judgment procured by fraud. *Rooker-Feldman* prohibits Blanford from seeking relief from the state court's judgment by relying on Indiana Trial Rule 60(B)(3) in federal court. See *Taylor v. Federal Nat'l Mortgage Ass'n*, 374 F.3d 529, 533 (7th Cir. 2004) (holding

that *Rooker-Feldman* precludes a federal claim of fraud on the state court brought under Indiana Trial Rule 60(B)(3)).

II.    *Failure to State a Claim Upon Which Relief Can be Granted*

The court has subject matter jurisdiction, at least for now, over the claim that St. Vincent authorized Med-1 to seek attorney fees in violation of the FDCPA, so the court addresses St. Vincent's failure to state a claim argument only as it applies to the attorney fee claim.  St. Vincent argues that the claim should be dismissed for two reasons:  first, that St. Vincent is not a "debt collector" and thus not subject to the FDCPA, and second, that the state court judgment bars Blanford's claim because of *res judicata*.  Blanford's FDCPA claim based on the attorney fee request will not be dismissed.

A.    *Legal Standard*

In evaluating a Rule 12(b)(6) motion to dismiss, the court must assume as true all well-pleaded facts set forth in the complaint and construe the allegations liberally, drawing all inferences favorable to the plaintiff.  See *Brown v. Budz*, 398 F.3d 904, 908-09 (7th Cir. 2005).  A plaintiff must "raise a right to relief above the speculative level" by pleading "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, —, —, 127 S. Ct. 1955, 1965, 1974 (2007).  Dismissal is warranted if the factual allegations,

seen in the light most favorable to the plaintiff, do not plausibly entitle the plaintiff to relief.  *Id.* at —, 127 S. Ct. at 1968-69.


        B.        *St. Vincent's Status as a Debt Collector*

Blanford's FDCPA claim can succeed only if St. Vincent is a "debt collector." See 15 U.S.C. §§ 1692e and 1692f.  An FDCPA "debt collector" is "a person who endeavors to collect the debts owed to 'another.'"  *Nielsen v. Dickerson*, 307 F.3d 623, 634 (7th Cir. 2002), citing 15 U.S.C. § 1692a(6).  "Creditors who are attempting to collect their own debts generally are not considered debt collectors under the statute."  *Nielsen*, 307 F.3d at 634.  The FDCPA contains a "false name" exception that provides that a creditor itself is a debt collector if, "in the process of collecting his own debts, [the creditor] uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts."  15 U.S.C. § 1692a(6); *Nielsen*, 307 F.3d at 634.  St. Vincent could have acted a debt collector only if it fell within the false name exception.


In *Nielsen*, the Seventh Circuit held that the false name exception applied to a law firm that sent out debt collection letters on behalf of a credit card servicing company.  In that case, Nielsen sued the servicing company, Household, and the law firm that Household hired to send collection notices, Dickerson. Despite being a law firm, Dickerson had limited involvement in the collection attempts.  Household forwarded delinquent account data to the law firm, which

applied a three-step process to review the data and determine if the data was complete and accurate, whether any individuals on the list had filed bankruptcy, and whether any of the individuals lived in states where the firm could not send notices. *Nielsen*, 307 F.3d at 626-27. The law firm made no individualized assessment of the accounts, and the law firm took no legal action on behalf of Household even if the accounts remained unpaid. *Id.* at 629-30. The Seventh Circuit held that Household was a debt collector under the false name exception because the law firm "was not genuinely involved in the effort to collect Household's debts and . . . the letter he sent to Household's debtors was not truly 'from'" the law firm. *Id.* at 634. The Seventh Circuit identified several factors suggesting that Household was subject to the false name exception. The factors suggested that the law firm was exercising no independent judgment and that the law firm was Household's instrumentality.

St. Vincent argues that its situation can be distinguished from Household's situation because Med-1 instituted legal actions and Med-1 is a "debt collector" under the FDCPA. The law firm's failure to institute a collection action was only one factor cited by the Seventh Circuit in *Nielsen*. Blanford can take advantage of the false name exception at the pleading stage. The complaint alleges that Med-1 was St. Vincent's instrumentality at several points. See Compl. ¶¶ 25, 26, 29, 33. The court would need more information to determine whether Med-1 was "genuinely involved" in efforts to collect Blanford's debts. See *Nielsen*, 307 F.3d at 634 (affirming summary judgment for plaintiff class on the "false name" issue).

At the pleading stage, the court makes a reasonable inference in Blanford's favor and assumes that Med-1 was acting at St. Vincent's direction and exercising no independent judgment.  Resolving this issue will require further evidence.

        C.    *Res Judicata*

Blanford's only remaining claim is that St. Vincent authorized Med-1 to collect attorney fees from her.  As discussed above, if the state court ordered Blanford to pay attorney fees to Med-1, her claim is barred by the *Rooker-Feldman* doctrine.  If the state court rendered no attorney fees judgment against her, then no attorney fees judgment could be used as *res judicata* against her.

III.    *Conclusion*

The motion to dismiss is denied as it applies to Blanford's FDCPA claim based on attorney fees, and it is granted as it applies to all other claims.

*Motion for Class Certification*

The only surviving claim is the claim that St. Vincent violated the FDCPA by authorizing Med-1 to collect attorney fees from Blanford.  Blanford asks the court to certify the following attorney fees class:

> All natural persons sued in the name of Med-1 Solutions, LLC on a consumer debt owned by St. Vincent where collection activity was undertaken for the recovery of a claim that included attorney fees within one year prior to August 13, 2007.

Dkt. No. 7 at 5.  Defendant has not filed a timely response to the motion. However, Blanford and other class members can bring their attorney fees claims only if the state court did not order them to pay attorney fees to Med-1.  The court directs Blanford to supplement her motion for class certification by submitting an affidavit or an authentic copy of the state court judgment showing whether the state court ordered her to pay attorney fees to Med-1, and by providing additional information indicated below.  The court will discuss class certification in this entry as the parties have briefed it.  Because the class definition must be amended to reflect the Rooker-Feldman problem, however, the court does not grant or deny the motion at this time.  The court will discuss class certification as it applies to the following class:

> All natural persons sued in the name of Med-1 Solutions, LLC on a consumer debt owned by St. Vincent where collection activity was undertaken for the recovery of a claim that included attorney fees within one year prior to August 13, 2007, but for whom attorney fees were not awarded by a court.

To certify a plaintiff class under Rule 23, Blanford must first satisfy all four elements of Rule 23(a):  (1) the class is too numerous to join all members; (2) there are questions of law or fact common to the class; (3) the claims of representative parties are typical of those of the class members; and (4) the representative parties will fairly and adequately represent the class.  Fed. R. Civ. P. 23(a).  Once these requirements are satisfied, the plaintiffs must also satisfy at least one of the subsections of Rule 23(b).  The party seeking class certification bears the burden of proof in establishing each of the requirements under Rule 23.  See *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993).  The failure to satisfy any one of these elements precludes certification.  *Id.*

In deciding whether to certify a class, the court is not required to accept the allegations in the complaint as true.  The court should make any factual and legal inquiries that are necessary to ensure that the requirements for class certification are satisfied, even if the underlying considerations overlap the merits of the case. *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676 (7th Cir. 2001).

I.     *Rule 23(a)*

   A.     *Numerosity*

The first requirement for class certification is that the class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1). The plaintiff does not have to specify the exact number of class members, but she

cannot merely speculate about the size of the class and allege that joinder is impractical.  *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989).  In her brief, Blanford alleges that Med-1 sued over 1,000 individuals on St. Vincent's behalf during the applicable time period, and she also alleges that Med-1 requested attorney fees from many of these individuals.  Dkt. No. 7 at 14.  She cites exhibits indicating that St. Vincent forwarded hundreds of delinquent accounts to Med-1, that Med-1 sought attorney fees from individuals whom it sued (not necessarily on behalf of St. Vincent), and that Med-1 received judgments against many individuals whom it sued (again, not necessarily on behalf of St. Vincent).  Dkt. No. 8, App. 1, Ex. R; Dkt. No. 8, App. 3.  Blanford does not cite evidence that shows how many individuals fit within the amended definition of the class set forth above.  Blanford does not need to show the exact number of individuals who are within the class, but she must provide the court with more than speculation that it is impractical to join all of the class members.  See *Marcial*, 880 F.2d at 957 (numerosity requirement not met when plaintiffs "only speculated as to the number of persons who may have legitimate claims").

B.   *Commonality*

The second requirement for class certification is that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)."  *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998), quoting *Rosario v.*

*Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992).  "Common nuclei of fact are typically manifest where . . . the defendants have engaged in standardized conduct towards members of the proposed class . . . ."  *Keele*, 149 F.3d at 594.  Blanford alleges that St. Vincent engaged in standardized conduct by authorizing Med-1 to seek attorney fees from class members.  There is a legal question common to all class members:  whether St. Vincent violated the FDCPA by authorizing Med-1 to seek attorney fees from class members.  The commonality requirement appears to be satisfied in this case.

C.    *Typicality*

The third requirement for class certification is that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  A plaintiff's claim is typical "if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory."  *Keele*, 149 F.3d at 595, quoting *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983).  The focus of the typicality inquiry is on the defendant's conduct and the plaintiff's legal theory, not on whether class members suffered the same injury.  *Rosario*, 963 F.2d at 1018.  If, and only if, the state court did not order Blanford to pay attorney fees, she appears to satisfy the typicality requirement.  St. Vincent's alleged practice of authorizing Med-1 to seek attorney fees gave rise to Blanford's claim and the claim of potential class members.

D.     *Adequacy of Representation*

The fourth requirement for class certification is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).   The adequacy standard involves two elements.   First, a class representative must have a sufficient stake in the outcome to ensure zealous advocacy and must not have claims antagonistic to or conflicting with claims of other class members.   Second, counsel for the named plaintiff must be experienced, qualified, and generally able to conduct the litigation on behalf of the class.  See *Susman v. Lincoln American Corp.*, 561 F.2d 86, 90 (7th Cir. 1977).

Blanford satisfies the first prong of the adequacy test if, and only if, the state court did not order her to pay attorney fees.  Blanford's claim is the same as other potential class members' claim.  Additionally, Blanford seeks the same type of damages that other class members seek, so her interests are not antagonistic to other class members' interests.  Blanford also appears to satisfy the second prong of the adequacy test.  Plaintiff's counsel has conducted substantial FDCPA and class action litigation.  Dkt. No. 8, App. 5.

II.    *Rule 23(b)*

In addition to satisfying the four requirements of Rule 23(a), Blanford must satisfy one of the prongs of Rule 23(b).  Blanford argues that she satisfies Rule 23(b)(3).  Under Rule 23(b)(3), Blanford must show that common questions of fact or law predominate over issues affecting individual class members and that a class action is superior to other available methods for fair and efficient adjudication of the controversy.

A.    *Predominance of Common Issues*

When a class challenges a standard practice, the legality of that practice will usually be the predominant issue in the class action.  *Herkert v. MRC Receivables Corp.*, 254 F.R.D. 344, 352 (N.D. Ill. 2008) (finding predominance inquiry satisfied by FDCPA class).   In this case, the class challenges St. Vincent's allegedly standard practice of authorizing Med-1 to sue class members and seek attorney fees.  The validity of that practice will be the predominant issue in this case.  That issue will not require individual determinations.  While the damages calculation may differ among class members, the legal issues will remain the same.  In any event, the need for such individual damages calculations does not defeat class certification.  See generally Newberg on Class Actions § 4:25 (4th ed. 2008) (failure to certify an action under Rule 23(b)(3) on the sole basis that individualized damages determinations make the class unmanageable is disfavored and should be the exception rather than the rule).

B.     *Superiority of the Class Device*

"A class action is superior where potential damages may be too insignificant to provide class members with incentive to pursue a claim individually." *Herkert*, 254 F.R.D. at 352-53, quoting *Jackson v. National Action Financial Servs., Inc.*, 227 F.R.D. 284, 290 (N.D. Ill. 2005).   The class device is especially appropriate for modest consumer claims.  *Herkert*, 254 F.R.D. at 353.  Blanford alleges that St. Vincent authorized Med-1 to seek attorney fees from many individuals.   The FDCPA permits these individuals to seek individual recoveries of actual damages plus $1,000 in statutory damages.   15 U.S.C. § 1692k(a)(1), (2).   Many class members may be deterred from filing actions because they are unaware they possess a cause of action or are unwilling to undertake the commitment required by litigation. See *Herkert*, 254 F.R.D. at 353 (recognizing that individual plaintiffs may be deterred from filing FDCPA actions).  In fact, the FDCPA provides a special measure of damages in class action cases. 15 U.S.C. § 1692k(a)(2)(B) (authorizing courts to award the lesser of $500,000 or 1% of the net worth of the debt collector to a class in lieu of individual recovery).  The class device is likely superior in this case.

III.    *Need for Further Submissions*

Class certification may be appropriate in this case, but Blanford must submit additional information as discussed above, and shall do so no later than March 13, 2009.   The court does not rule on Blanford's Motion for Class Certification at this point.   The court grants St. Vincent fourteen days from the date Blanford files her supplement to file its brief in opposition to class certification.   Blanford will have seven days after service of the response to file her reply.   See S.D. Ind. Local R. 7.1(b).

*Conclusion*

As discussed above, the motion to dismiss is granted in part and denied in part.   Dkt. No. 16.   The motion to strike is granted.   Dkt. No. 23.

So ordered.

Date: February 27, 2009

_____
DAVID F. HAMILTON, CHIEF JUDGE
United States District Court
Southern District of Indiana

Copies to:

Glenn Vician
BOWMAN, HEINTZ, BOSCIA & VICIAN
bhbv2@netnitco.net

Robert Stochel
HOFFMAN & STOCHEL
res@reslaw.org

Angela Smith
HALL RENDER KILLIAN HEATH & LYMAN
asmith@hallrender.com